IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| ARONIA CONWAY PRITCHETT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 2:08cv30-WC |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

**I.     INTRODUCTION**

Plaintiff Aronia Conway Pritchett applied for supplemental security income benefits pursuant to Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.* (hereinafter "the Act"). Her application was denied at the initial administrative level. Plaintiff then requested and received a hearing before an Administrative Law Judge (ALJ). Following the hearing, the ALJ also denied the claims. The Appeals Council rejected a subsequent request for review. The ALJ's decision consequently became the final decision of the Commissioner of Social Security (Commissioner).[1]  *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The case is now before the Court for review under 42 U.S.C. § 405(g). Pursuant to 28 U.S.C. § 636(c), both parties have consented to the conduct of all proceedings and entry

---

[1]     Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub. L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

of a final judgment by the undersigned United States Magistrate Judge. Pl.'s Consent to Jurisdiction (Doc. #10); Def.'s Consent to Jurisdiction (Doc. #9). Based on the Court's review of the record and the briefs of the parties, the Court AFFIRMS the decision of the Commissioner.

## II.   STANDARD OF REVIEW

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[2]

To make this determination, the Commissioner employs a five-step, sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920 (2006).

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1? [the Listing of Impairments]
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not

---

[2]   A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The burden of proof rests on a claimant through Step 4. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004). A claimant establishes a *prima facie* case of qualifying disability once they have carried the burden of proof from Step 1 through Step 4. At Step 5, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity (RFC). *Id*. at 1238-39. RFC is what the claimant is still able to do despite his impairments and is based on all relevant medical and other evidence. *Id*. It also can contain both exertional and nonexertional limitations. *Id*. at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id*. at 1239. To do this, the ALJ can either use the Medical Vocational Guidelines[4] (grids) or call a vocational expert (VE). *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience.

---

[3] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986), is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See, e.g., Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981).

[4] *See* 20 C.F.R. pt. 404 subpt. P, app. 2.

Each factor can independently limit the number of jobs realistically available to an individual. *Phillips*, 357 F.3d at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id*.

The Court's review of the Commissioner's decision is a limited one. This Court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). *See also Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial evidence."). A reviewing court may not look only to those parts of the record which support the decision of the ALJ, but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings. . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III.  ADMINISTRATIVE PROCEEDINGS

Plaintiff was fifty-one years old and had obtained her G.E.D. as well as some post-secondary education at the time of the hearing before the ALJ. (Tr. 195).[5] Plaintiff's primary past relevant work experience included working as a nurse's aid, cashier checker, home attendant, substitute teacher, and deli cook. (Tr. 211). Following the administrative hearing, and employing the five-step process, the ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset date of August 5, 2005 (Step 1). (Tr. 15). At Step 2, the ALJ found that Plaintiff suffers from the severe impairment of "major depressive disorder." (Tr. 15). The ALJ nonetheless found Plaintiff "does not possess an impairment or combination of impairments that meets or medically equals one of the listed impairments." (Tr. 18). Next, the ALJ found that Plaintiff retains the RFC to "perform basic work activities at all exertional levels," but that, "due to depressive features, she is limited to less than frequent changes in a routine work setting." (Tr. 19). Specifically, the ALJ found that Plaintiff "has no limitations in her ability to walk, stand, sit, lift, carry, push/pull, reach, see, hear, and communicate." (Tr. 19) (Step 3). At Step 4, the ALJ found that Plaintiff could perform her past relevant work, namely "the jobs of sitter or nursing assistant." (Tr. 22). At Step 5, and after obtaining the testimony of a vocational expert, the ALJ determined that, based on her age, education, past work experience, and RFC, Plaintiff could perform jobs

---

[5]   Specifically, Plaintiff testified that she had received a "business degree in business education" after completing an eighteen-month course. (Tr. 195).

5

that exist in significant numbers in the national economy. (Tr. 22). Consequently, the ALJ found Plaintiff had not been disabled since the alleged onset date.

## IV. PLAINTIFF'S CLAIMS

Plaintiff sets forth three claims in challenging the Commissioner's decision: (1) that "the ALJ failed to evaluate the medical opinions expressed by Ms. Pritchett's treating physician under the proper legal standard"; (2) that "the ALJ improperly dismissed the limitations imposed by Ms. Pritchett's dyshydrosis of the hands and feet and internal hemorrhoids"; and (3) that "the ALJ failed to provide adequate reasons for his implicit rejection of the medical opinions expressed by the non-examining State agency medical consultant." Pl.'s Brief in Support of Complaint (Doc. #13) at 11. The Court will address each of Plaintiff's clams in turn.

## V. DISCUSSION

### A. *The ALJ's evaluation of the medical opinion of Plaintiff's treating psychiatrist.*

Plaintiff contends

> the ALJ failed to evaluate the medical opinions expressed by Ms. Pritchett's treating psychiatrist [Dr. Fernando Lopez] under the proper legal standard. Ms. Pritchett's treating psychiatrist assessed the functional restrictions imposed by her Major Depressive Disorder with Psychotic Features. As evidenced by vocational expert testimony, the limitations assessed by Dr. Lopez would prevent the performance of substantial gainful activity.

Pl.'s Brief in Support of Complaint (Doc. #13) at 11. Plaintiff argues that the ALJ's rejection

of Dr. Lopez's opinion is problematic because 1) part of the ALJ's reasoning for rejecting Dr. Lopez's opinion, that the relevant time period is ambiguous, triggered the ALJ's responsibility to further develop the record and 2) the ALJ's finding that Dr. Lopez's opinion is not supported by medical evidence is erroneous. Defendant, on the other hand, maintains that "good cause" supported the ALJ's determination to discount Dr. Lopez's opinion. Def.'s Brief in Support of the Commissioner's Decision (Doc. #16) at 4.

In an undated questionnaire supposedly created as part of a larger "narrative report," Dr. Lopez, characterized Plaintiff's "psychiatric/psychological impairment" as "marked" or "extreme" with respect to a number of common workplace, indeed daily living, scenarios and stressors. (Tr. 170-72).[6] The questionnaire indicates that the impairments noted by Dr. Lopez result in limitations that "can be expected to last 12 months or longer" at the given levels of severity. (Tr. 171). In the comments section, Dr. Lopez simply states "Major Depressive Disorder with Psychotic Features." (Tr. 172). At the hearing before the ALJ, the vocational expert testified that, crediting Dr. Lopez's assessment of Plaintiff's mental limitations as accurate, Plaintiff would not be capable of working. (Tr. 213).

In his opinion, the ALJ addressed the questionnaire as follows:

---

[6] At the hearing, the ALJ expressed his concern that, due to an illegible signature and lack of date, he might not be able to rely upon the questionnaire. (Tr. 213). After the hearing, the ALJ added to the record a letter from Jane Lambert, a nurse for Dr. Lopez, in which she confirmed that Dr. Lopez had signed and completed the questionnaire. (Tr. 177). The letter from Ms. Lambert does not indicate when Dr. Lopez completed the questionnaire or to what time period it is relevant.

> The undersigned Administrative Law Judge has considered the opinion of Dr. Lopez that the claimant experiences multiple "marked" and "extreme" limitations in her functional capacity caused by major depressive disorder with psychotic features. The opinion is rejected and afforded no weight[,] first, because it is undated and does not indicate the time period during which the assessment applies and because it is neither a reasoned nor documented opinion accompanied by acceptable medical evidence consisting of symptoms, signs, laboratory findings (including psychological test findings).

(Tr. 18). The ALJ went on to find that, contrary to the opinion of Dr. Lopez, the record lacked substantial evidence that Plaintiff's mental impairments 1) "caused serious difficulty performing activities of daily living," 2) "caused impaired social functioning," 3) "caused major limitations [to Plaintiff's] ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings," or 4) "caused episodes of decompensation." (Tr. 18).

When confronted with the opinion of a claimant's treating physician, the ALJ must afford it substantial and considerable weight unless "good cause" is shown to the contrary. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004). *See also Bliss v. Comm'r of Soc. Sec.*, 254 Fed. App'x 757, 758 (11th Cir. 2007) ("An ALJ may reject the opinion of a treating physician, which ordinarily receives substantial weight, where 'good cause' is established."). "'[G]ood cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004). "The ALJ must clearly

articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). *See also MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986) (holding the ALJ "must specify what weight is given to a treating physician's opinion and any reason for giving it no weight"). "Where the ALJ articulated specific reasons for failing to give the opinion of a treating physician controlling weight, and those reasons are supported by substantial evidence," a reviewing court may not "disturb the ALJ's refusal to give the opinion controlling weight." *Carson v. Comm'r of Soc. Sec.*, 2008 WL 4962696 at *1 (11th Cir. Nov. 21, 2008).

In this instance, the ALJ rejected the opinion of Plaintiff's treating psychiatrist because, in the ALJ's view, 1) the lack of a date or other indication of the temporal relevance of Dr. Lopez's opinion rendered the opinion of little value in assessing Plaintiff's impairments and, more importantly, 2) the ALJ found the opinion was "neither a reasoned nor documented opinion accompanied by acceptable medical evidence consisting of symptoms, signs, and laboratory findings." (Tr. 18). The ALJ's decision is supported by the requisite substantial evidence. For the most part, the drastic impairments to Plaintiff's functional capacities "estimated" by Dr. Lopez bear little relation to the objective evidence in the record, the treatment notes from Dr. Lopez and others associated with East Central Mental Health, and, in some instances, Plaintiff's own testimony. Indeed, due to the fairly uniform severe impairment findings of Dr. Lopez and the lack of any elaboration on such

findings, the ALJ was justified in considering Dr. Lopez's opinion "neither . . . reasoned or documented" and, thus, conclusory. Good cause supports the ALJ's rejection of a treating physician's opinion which is conclusory and unsupported by the physician's own records. *Phillips*, 357 F.3d at 1241.

Plaintiff claims that objective support for Dr. Lopez's opinion can be found in "the objective mental status examination from East Central Mental Health, . . . Dr. O'Hearn's diagnostic impression of severe depression . . . and by the medications [Dr. Lopez] chose to administer" to Plaintiff. Pl.'s Brief in Support of the Complaint (Doc. #13) at 13-14. However a review of the records cited by Plaintiff does not permit the conclusion that the ALJ's finding to the contrary is unsupported by substantial evidence. The only conclusion to be drawn from Dr. Lopez's responses to the questionnaire is that, in *all* aspects of functioning, Plaintiff is "marked[ly]"[7] or "extreme[ly]"[8] impaired. Other than the question left blank[9] by Dr. Lopez, he failed to find any of Plaintiff's functional abilities only

---

[7] The questionnaire defines "marked" as an "impairment which seriously affects ability to function." (Tr. 170).

[8] The questionnaire circuitously defines "extreme" as "[e]xtreme impairment of ability to function." (Tr. 170).

[9] For some reason, Dr. Lopez gave no answer to the request that he "[e]stimate[] the degree of impairment of the claimant's ability to get along with co-workers or peers." (Tr. 170). This, of course, is an important query in assessing Plaintiff's ability to function in an employment capacity.

"mild[ly]"[10] or even "moderate[ly]"[11] impaired.  Given the definitions given to guide Dr. Lopez's responses to the questionnaire, it appears that an impairment greater than "moderate" precludes functioning of the type identified in the question.  Accordingly, Dr. Lopez essentially deemed Plaintiff impaired, to a preclusive degree, in all functional aspects.  The record evidence, however, does not support this conclusion.

Plaintiff's mood is reported as euthymic, meaning essentially normal or appropriate, she does not exhibit "psychotic symptoms," or there are no "problems" or "complaints" noted on many occasions in the record. (Tr. 159, 154, 153, 152, 150).  More importantly, certain medical records, including some from Dr. Lopez's own facility, appear to conflict, in discrete instances, with his opinion about the severity of Plaintiff's impairments.  For instance, in a "Mental Status Exam" completed at East Central Mental Health on August 30, 2005, Plaintiff's concentration is deemed "Normal and Focused," her thought and speech pattern are coherent, rational, and logical, her insight is adequate, and her judgment is average. (Tr. 165).  Likewise, at Dr. O'Hearn's consultative psychological examination in November, 2005, Plaintiff was fully oriented, her attention and concentration were intact, and she was able to perform mental exercises testing her concentration and focus. (Tr. 122).  In another "Mental Status Exam" completed by East Central Mental Health in September, 2006,

---

[10]   The questionnaire defines "mild" as "[s]uspected impairment of slight importance which does not affect ability to function." (Tr. 170).

[11]   The questionnaire defines "moderate" as an "impairment which affects but does not preclude ability to function."

Plaintiff's concentration was again deemed normal and focused, her orientation normal, her insight adequate, and her judgment average.[12] (Tr. 146). All of these findings appear to openly conflict with Dr. Lopez's opinion that Plaintiff is essentially precluded from, *inter alia*, being able to "ask simple questions or request assistance," "understand, remember and carry out simple instructions," "understand, remember and carry out repetitive tasks," "maintain attention and concentration for extended periods," or "make simple work-related decisions." (Tr. 170-71). In addition, Plaintiff's own testimony and reports that she regularly attends church (Tr. 202), maintains friendships (Tr. 208), lives by herself (Tr. 207), and is able to perform most of her daily living activities - like cooking, cleaning, shopping, grooming and hygiene - unassisted (Tr. 83-84, 123, 207-08) appear to undermine Dr. Lopez's ultimate conclusion that Plaintiff is essentially precluded from being able to "interact appropriately with the general public," perform "daily activities, e.g., ability to attend meetings (church, school, lodge, etc.) work around the house, socialize with friends and neighbors, etc.," or that her "interests" are extremely constricted and her "personal habits" are extremely deteriorated. (Tr. 170).

Plaintiff's claim that Dr. Lopez's opinion is supported by Dr. O'Hearn's diagnosis of "Major Depressive Disorder, Severe with Psychotic Features" (Tr. 123) and the fact that

---

[12] Indeed, the results of the second "Mental Status Exam," taken more than a year after the first one at East Central Health, indicates that Plaintiff's condition was improving. Plaintiff's appetite, sleeping, and mood were all graded better during the later "Mental Status Exam." (Tr. 146).

Plaintiff was prescribed certain drugs is also unavailing. Dr. Lopez's opinion related to the functional capacities of Plaintiff, an issue within the purview of the ALJ. The facts that she has been independently diagnosed as depressed and that she has been prescribed certain medications are not conclusive of her functional capacities. In sum, there is ample evidence in the record - both medical and testimonial - to support the ALJ's finding that Dr. Lopez's drastic and sweeping opinion is not "bolstered by the evidence," that the "evidence support[s] a contrary finding," and that Dr. Lopez's opinion is "conclusory or inconsistent with the doctor's own medical records." *Phillips*, 357 F.3d at 1240-41.

While there is also evidence in the record - including evidence of Plaintiff's often depressed mood, lethargy, anxieties, hallucinations, and insomnia - that might support Dr. Lopez's opinion that Plaintiff's impairments are "marked" or "extreme" in certain functional aspects, this Court's inquiry is not whether the evidence preponderates one way or the other. This Court must simply determine whether "substantial evidence," i.e., "less than a preponderance, but more than a scintilla," supports the ALJ's determination that Dr. Lopez's opinion is "neither . . . reasoned nor documented." As demonstrated above, the ALJ's finding is supported by substantial evidence.[13]

The ALJ clearly enunciated his reasons for rejecting the opinion of Plaintiff's treating

---

[13] This finding obviates the need for the Court to consider Plaintiff's related argument that, due to the ALJ's reliance on the lack of a date or other indication of temporal relevance of the questionnaire, the ALJ was required to further develop the record to resolve this ambiguity. Because the ALJ was justified in affording the questionnaire no weight based on the evidence in the record, the questionnaire's lack of date is irrelevant.

psychiatrist and those reasons are supported by substantial evidence. Thus, the ALJ had "good cause" for rejecting the treating psychiatrist's opinion. Plaintiff's argument to the contrary is without merit.

### B. *The ALJ's treatment of evidence of the limitations imposed by Plaintiff's dyshydrosis of the hands and feet and internal hemorrhoids.*

Plaintiff contends the

> ALJ inappropriately acted as both judge and physician when he summarily dismissed [Plaintiff's] symptomatology related to her dsyhydrosis of the hands and feet and internal hemorrhoids. Specifically, the ALJ implied in his decision that the examination of Dr. King in some way undermined [Plaintiff's] allegations. The ALJ's opinion even failed to mention Dr. King's opinion that when [Plaintiff's] hands and feet were broken out in a rash, "it would be quite painful and very difficult to work under those circumstances."

Pl.'s Brief in Support of Complaint (Doc. #13) at 14-15 (internal citations omitted).[14] Defendant maintains that the ALJ did properly consider these impairments, but that he nonetheless found they are not severe, and that decision is supported by substantial evidence. Def.'s Brief in Support of the Commissioner's Dec. (Doc. #16) at 8-9.

At the hearing before the ALJ, Plaintiff testified that she suffers from a "chronic rash"[15] which periodically affects her hands and feet and has previously been so debilitating

---

[14] Despite his assertion that the ALJ erred in his treatment of evidence of Plaintiff's internal hemorrhoids, Plaintiff presents no specific argument related to the ALJ's findings respecting her hemorrhoids. Instead, Plaintiff only discusses evidence, and the ALJ's findings, concerning her skin condition.

[15] Plaintiff also refers to the condition as a "chronic psoriasis." (Tr. 198).

14

that she could not walk and was forced to crawl because "every time I put my feet on the floor skin would come off." (Tr. 197). She testified that the blisters caused by the condition "never goes away" (Tr. 197), but that there are times when it worse than others. (Tr. 199). Plaintiff testified that she treats the condition with a topical cream or lotion. (Tr. 198). In his decision, the ALJ found that Plaintiff's skin condition does not amount to a severe impairment. In support, the ALJ relied upon the paucity in the record of evidence that Plaintiff sought medical treatment for the condition after the alleged onset date, the report of the consultative medical examiner, Dr. King, and that there is only one mention of symptoms possibly related to the condition in the counseling notes from Plaintiff's thirteen month relationship with East Central Mental Health. (Tr. 17).

The crux of the parties' arguments on this issue appears to be whether or not the results of the consultative exam performed by Dr. King lend substantial evidence to the ALJ's finding that Plaintiff's skin condition is not a severe impairment. Both parties rely on portions of the report in advancing their positions. *Compare* Pl.'s Brief in Support of the Complaint (Doc. #13) at 15 and Pl.'s Reply Brief (Doc. #21) at 7-8 *with* Def.'s Brief in Support of the Commissioner's Dec. (Doc. #16) at 9. Dr. King examined Plaintiff on November 15, 2005.[16] Dr. King first notes Plaintiff's subjective complaints about the condition and its symptoms, as well as her reports of that she has previously visited

---

[16] According to her testimony, by this time Plaintiff had been afflicted with the skin condition for ten years. (Tr. 197).

"numerous family practitioners and . . . a dermatologist" about the condition.[17]  (Tr. 124).

Dr. King's report assessed the condition of Plaintiff's skin as follows:

> Shows what looks like a dyshidrosis of her palms and her feet very mild in nature at this time.  The hands are almost completely normal.  Although I can see where there has been some peeling of the skin.  Lower extremities the feet show some skin break down and healing.  As mentioned already with no blister formation at this time, but evidence of prior blister formation with some peeling of the epithilium.  There is not skin break down at this time and no break down past the dermis.

(Tr. 126).  Dr. King next gave his "Impression" of the skin condition as "DYSHYDROSIS OF THE HANDS AND FEET MOST LIKELY SECONDARY TO ECZEMA THAT ARE QUITE SEVERE IN NATURE AT TIMES, ALTHOUGH NOT PRESENTLY." (Tr. 126).

Dr. King then gave his opinion of Plaintiff's functional capacities in light of her asserted impairments:

> Based on these medical findings despite the above mentioned impairments, her ability to do work related activity such as sitting is not impaired.  Standing, walking, lifting, carrying, handling objects, hearing and speaking and travelling [sic] are not impaired at this time.  However if her feet are broken out and her hands are broken out with rash as she described, it would be quite painful and very difficult to work under those circumstances.

(Tr. 126).

A simple reading of Dr. King's report reveals that, while there were indications of previous peeling and blistering on Plaintiff's hands and feet, they were essentially normal and

---

[17]  It does not appear that records of these visits or any treatments rendered are contained in the record.

16

healed at the time of the examination. Dr. King's assessment certainly undercuts Plaintiff's testimony about the severity and near-ubiquity of her condition. More importantly, his opinion that the condition, as presented to him, causes no impairment to Plaintiff's ability to do "work related activity" was entitled to great deference. To the extent Dr. King considered the condition symptomatic, "as described," and then surmised it "would be quite painful and very difficult to work," Dr. King was only crediting Plaintiff's subjective description of the condition, not rendering an opinion based on the objective evidence before him. Because Dr. King's observations appear to conflict with Plaintiff's testimony at the hearing, and because the ALJ found Plaintiff generally less than wholly credible (Tr. 15), the ALJ was justified in not relying upon portions of Dr. King's opinion which constituted speculation based entirely on Plaintiff's subjective reports of her symptoms.

Given Dr. King's findings as to the severity of Plaintiff's condition at the time of examination and the lack of other objective medical evidence in the record pertaining to Plaintiff's skin condition, the ALJ's finding that Plaintiff's skin condition is not a severe impairment is supported by substantial evidence. Plaintiff's argument to the contrary is without merit.

### C. *The ALJ's treatment of the opinion expressed by the non-examining state agency medical consultant.*

Plaintiff contends "the ALJ failed to provide adequate reasons for his implicit rejection of the medical opinions expressed by the non-examining State agency medical

consultant [and] . . . failed to incorporate the specific limitations as assessed by the non-examining State agency medical consultant into his RFC finding or provide rationale thereto." Pl.'s Brief in Support of the Complaint (Doc. #13) at 15. Plaintiff also contends that the ALJ acted in violation of Social Security regulations in reaching his decision. In support of the latter contention, Plaintiff argues that the ALJ acted in violation of SSR 96-6p, which provides that, while the ALJ is not "bound by findings made by State agency or other program physicians and psychologists, . . . they may not ignore these opinions and must explain the weight given to the opinions in their decisions." Pl.'s Reply Brief (Doc. #21) at 9. Defendant maintains that the ALJ's findings are supported by substantial evidence.

Applying the "special technique" for evaluating mental impairments as set forth in 20 C.F.R. § 416.920a, the ALJ assessed Plaintiff's functional limitations as follows: "moderate restriction of activities of daily living because of disturbed sleep and depressive symptoms; mild difficulties maintaining social functioning; mild difficulties maintaining concentration, persistence or pace; and . . . no repeated episodes of decompensation." (Tr. 18). These findings differ slightly from those of the State agency psychological consultant, who, in completing the Psychiatric Review Technique, found that Plaintiff has "mild" restriction of daily living activities but "moderate" difficulties maintaining social functioning. (Tr. 141).[18] Plaintiff contends this discrepancy in the ALJ's findings constitutes reversible error.

---

[18] With respect to Plaintiff's difficulties in maintaining concentration, persistence, or pace and episodes of decompensation, the ALJ's findings are identical to those of the State agency consultant. *Compare* Tr. 18 *with* Tr. 141.

18

Plaintiff deems the fact that the ALJ found Plaintiff's difficulties in maintaining social functioning "mild" rather than "moderate" "highly *prejudicial* considering the non-examining consultant expressed that Ms. Pritchett's 'working environment should limit continuous and prolonged contact with others . . . .'" Pl.'s Reply Brief (Doc. 321) at 9. However, the same consultant, Dr. Susan Kotler, also found no significant limitations to Plaintiff's ability to ask simple questions or request assistance and her ability to maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness. (Tr. 128). Dr. Kotler's ultimate assessment of Plaintiff's functional capacity was that Plaintiff has no significant limitations and that she "is able to interact appropriately in brief, casual encounters with the public and with co-workers, and to respond appropriately to simply-explained, constructive, supportive, and nonconfrontational feedback." (Tr. 129). In light of Dr. Kotler's qualification of her "moderate" assessment of Plaintiff's social functioning impairment, as well as other evidence about Plaintiff's social functioning - including her church attendance, shopping, maintaining friendships, etc., and the lack of evidence in the record of "a history of altercations, evictions, firings, fear of strangers, avoidance of interpersonal relationships, social isolation, inability to get along with others, highly antagonistic, hostile, or uncooperative behavior" (Tr. 18) - the ALJ's finding that Plaintiff's social functioning is only mildly impaired is supported by substantial evidence.

Plaintiff has not demonstrated that the ALJ's finding of a "mild" rather than "moderate" difficulty in maintaining social functioning is a difference of any significance.

19

It does not follow that, had the ALJ found Plaintiff's impairment "moderate" rather than "mild," he would have revised her RFC in a manner benefitting Plaintiff. Moreover, the slight variation in seriousness entailed by the two terms certainly does not permit the conclusion, indulged by Plaintiff, that the ALJ ignored, or even rejected, the State agency consultant's opinion. In essence, the ALJ agreed with Dr. Kotler with respect to two of her functional limitation findings and disagreed as to two others. While the ALJ did find Plaintiff's social functioning difficulties less limited than did Dr. Kotler, he found Plaintiff's restrictions on activities of daily living to be even more limited than did Dr. Kotler. In any event, the ALJ carefully scrutinized the record and relied upon all of the evidence before him in making his findings. The decision to slightly vary from the State agency medical consultant's findings does not, alone, warrant reversal. *See Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) ("The ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion.").

## VI.   CONCLUSION

The Court has carefully and independently reviewed the record and concludes the decision of the Commissioner is AFFIRMED. A separate judgment will issue.

DONE this 9th day of March, 2009.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE